**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA and
STATE OF FLORIDA, ex rel. JOHN
DOE,

    Plaintiff,

v.                                                                                          Case No. 6:14-cv-501-Orl-37DAB

HEALTH FIRST, INC.; HEALTH FIRST
HEALTH PLANS INC.; HEALTH FIRST
MEDICAL GROUP; MELBOURNE
INTERNAL MEDICINE ASSOCIATES,
P.A.; HOLMES REGIONAL MEDICAL
CENTER; PALM BAY HOSPITAL;
CAPE CANAVERAL HOSPITAL; VIERA
HOSPITAL; MELBOURNE SAME DAY
SURGERY CENTER; and
MELBOURNE GI CENTER,

    Defendants.

## ORDER

This cause is before the Court on the following matters:

(1) Defendants' Joint Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law (Doc. 74), filed October 29, 2015;

(2) Joinder in Motion to Dismiss Amended Complaint (Doc. 76), filed November 13, 2015;

(3) Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss Amended Complaint (Doc. 79), filed December 9, 2015;

(4) United States' Statement of Interest in Response to Defendants' Joint Motion to Dismiss Amended Complaint (Doc. 89), filed December 22, 2015; and

(5) Defendants' Notice of Supplemental Authority (Doc. 116), filed July 18, 2016.

(2) he must submit to polygraph testing for treatment and monitoring purposes.

## BACKGROUND

In this qui tam action—which was brought pursuant to the Federal False Claims Act ("**FCA**"), Florida's False Claims Act ("**FFCA**"), the Anti-Kickback Statute ("**AKS**"), and the Physician Self-Referral Law ("**Stark Act**")—Relator John Doe ("**Relator**")[1] seeks to recover damages and civil penalties based on allegedly "false and/or fraudulent statements, records, and claims made" to the United States of America ("**U.S.**") and the State of Florida ("**State**") during allegedly fraudulent schemes that spanned approximately fifteen years—from 1999 through February 2013 ("**Relevant Period**"). (Doc. 61.) The alleged perpetrators of the fraudulent schemes are ten affiliated providers of health care services and insurance in Brevard County, Florida ("**Defendants**"): (1) Health First, Inc. ("**HFI**"); (2) Melbourne Internal Medicine Associates, P.A. ("**MIMA**"); (3) Health First Medical Group ("**HFMG**"); (4) Holmes Regional Medical Center ("**HRMC**"); (5) Viera Hospital ("**VH**"); (6) Cape Canaveral Hospital ("**CCH**"); (7) Palm Bay Hospital ("**PBH**") (8) Melbourne Same-Day Surgery Center ("**MSDS**"); (9) Melbourne GI Center ("**MGIC**"); and (10) Health First Health Plans, Inc. ("**HFHP**"). (*See id.* ¶¶ 54, 55, 59–62, 72–79, 82, 85–87, 99, 118, 143–44, 162.)

Relator filed his initial Complaint under seal on **March 27, 2014**. (Doc. S-1.) The State declined to intervene and is not a party to this action. (Doc. 11 (citing Fla. Stat., § 68.083(6)(b).) In accordance with 31 U.S.C. § 3730(b)(4)(b), the U.S. also declined to

---

[1] From 1988 to 2010, Relator was an attending physician at Defendant Holmes Regional Medical Center, and from 1996 to the present, Relator was an attending physician at Defendant Palm Bay Hospital ("**PBH**"). (*See* Doc. 61, ¶ 16; *see* Doc. 74, pp. 1–2 n.2.)

intervene. (Doc. 10.) Reserving their rights, the State and the U.S. both requested that: (1) they be served with all pleadings filed in this action; and (2) before dismissing any Defendant from this action, the Court first "solicit" consent from the State and the U.S. Attorney General. (*See id.* (citing 31 U.S.C. § 3730(b)(1)); Doc. 11 (citing Florida Statutes, § 68.084(3)); Doc. 12 (approving the State's request and reservation); *see also* Docs. 85, 89, 96.)

When the State and the U.S. advised they would not intervene, the Court unsealed the initial Complaint and directed Relator to provide Defendants with service of process in accordance with Rule 4 of the Federal Rules of Civil Procedure. (Doc. 13.) Defendants then moved to dismiss (Doc. 45), but the motion was rendered moot upon the filing of an Amended Complaint (Doc. 61.)

Pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants moved to dismiss the Amended Complaint ("**Joint Motion**") "with prejudice" on the grounds that:

(1) the Amended Complaint constitutes a "shotgun" pleading ("**Shotgun Argument**") (*see* Doc. 74, pp. 2, 21–22);

(2) the FCA claims are not supported by sufficiently detailed factual allegations concerning the "'who,' 'what,' 'when,' and 'where'" of the purportedly false claims or the "circumstances which allegedly rendered" the claims false ("**Particularity Argument**") (*see id.* at 18–45);

(3) even if the Amended Complaint provided sufficiently particularized factual allegations, the bulk of Relator's claim are barred by the FCA's six-year statute of limitations ("**SOL Argument**") (*see id.* at 3–5, 26–30, 32);

(4) based on the FCA's public disclosure bar ("**PDB**"), Relator cannot state any claims based on Defendants' alleged conduct that occurred after **March 22, 2010**; and

    (5)    based on the PDB, the Court lacks jurisdiction to consider claims based on Defendants alleged conduct that occurred prior to **March 23, 2010**. (*See id.* at 6–18.)

(*See also* Doc 76.)

Relator responded to the 45-page Joint Motion with a 45-page opposition memorandum (Doc. 79 ("**Response**")), and the U.S. filed a 10-page Statement of Interest (Doc. 89 ("**Statement**")). *See* 28 U.S.C. § 517. On **July 20, 2016**, the Court conducted a hearing on the Joint Motion and heard argument concerning recent changes to the pertinent law ("**Hearing**"). (Doc. 117.) During the Hearing, the Court: (1) granted the Joint Motion; (2) addressed certain questions of law concerning the PDB and SOL Arguments; (3) dismissed the Amended Complaint; (4) set a deadline for Relator to file a Second Amended Complaint; (5) suspended non-discovery related deadlines; and (6) directed the parties to file proposed joint amendments to the Court's Case Management and Scheduling Order ("**CMSO**") (*see* Docs. 51, 78, 95, 114.)

## THE STATUTES

The FCA "is the primary law" on which governments rely "to recover losses caused by fraud." *See McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). Under the FCA,[2] civil liability is imposed on any person who: (1) "knowingly presents, or causes to be presented" to the U.S. "a false or fraudulent claim for payment or approval" (31 U.S.C. § 3729(a)(1)(A)); or (2) "conspires to" present or cause the presentment of such a false or fraudulent claim (*see id.*

---

[2] The parties do not dispute that the FFCA is "modeled after" the FCA and is generally interpreted and applied consistently with the FCA. (*See* Doc. 61 ¶ 34; Doc. 74, p. 2 n.3.) Accordingly, the Court does not separately address Relator's FFCA claims—Counts V, VI & VII (Doc. 261, ¶¶ 213–28).

§ 3729(a)(1)(C)).³ *See id.* § 3729(b)(2) (defining "claim" as "any request or demand . . . for money or property"); *see also Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012–13 (11th Cir. 2005); *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310–11 (11th Cir. 2002)).

The Stark Act prohibits: (1) physicians from making a referral "for the furnishing of designated health services" ("**DHS**") to an entity with which the physician has a "financial relationship" ("**Interested Entity**")—such as an "ownership or investment interest" or a "compensation arrangement"; and (2) Interested Entities from presenting or causing to be presented a claim for DHS. 42 U.S.C. §§ 1395nn(a); *see United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 698 (11th Cir. 2014) ("In its most general terms, the Stark statute prohibits doctors from referring Medicare patients to a hospital if those doctors have certain specified types of financial relationships with that hospital."); *see also United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 373 (4th Cir. 2015). Further, the AKS "prohibits knowingly offering or providing remuneration for the purpose of inducing the recipient to purchase a good or service for which payment may be made under a federal health care program" and Medicare. *See United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 808 (11th Cir. 2015) (citing 42 U.S.C. §§ 1320a–7b(b) and 1320a–7a(5)).

Under an implied certification theory ("**Certification Theory**"), violations of the AKS or the Stark Act may support liability under the FCA. *See Urquilla-Diaz v. Kaplan*

---

³ Persons act knowingly "with respect to information" if they: (1) have "actual knowledge of the information (31 U.S.C. § 3729(b)(1)(A)(i)); (2) act "in deliberate ignorance of the truth or falsity of the information" (*id.* § 3729(b)(1)(A)(ii)); or (3) "act in reckless disregard of the truth or falsity of the information" (*id.* § 3729(b)(1)(A)(iii)).

*Univ.*, 780 F.3d 1039, 1045 (11th Cir. 2015) (listing four elements for Certification Theory liability); *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005) (affirming denial of motion to dismiss FCA claims that were founded on allegations that the defendant submitted specific claims for reimbursement under Medicare with knowledge that such claims were ineligible for reimbursement due to defendant's violation of the AKS). Very recently, the U.S. Supreme Court explained that two conditions must exist to impose liability under the Certification Theory: "first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contract requirements makes those representations misleading half-truths." *See Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001 (2016) (remanding to lower court to determine if pleading provided sufficient facts to state with particularity a plausible FCA claim based on the Certification Theory of liability).[4]

## THE PLEADING STANDARDS

Rules 8 and 10 of the Federal Rules of Civil Procedure set forth minimum requirements for complaints filed in this Court. At a minimum: (1) pleadings must include "short and plain" statements of the pleader's claims set forth in "numbered paragraphs each limited as far as practicable to a single set of circumstances"; and (2) pleadings must not include mere labels, legal conclusions, or formulaic recitation of the elements of a

---

[4] Just last month, the U.S. Supreme Court held that FCA liability can attach when a defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly "fails to disclose the defendant's noncompliance" with a regulatory or statutory requirement that is material to the Government's payment decision.

claim. *See* Fed. R. Civ. P. 8(a), 8(d), 10(b); *see also* Local Rules 1.05, 1.06. Shotgun pleadings result when a party "fails to follow Rules 8 and 10." *See Hickman v. Hickman*, 563 F. App'x 742, 744 (11th Cir. 2014). When confronted with a shotgun complaint, district courts must require repleader. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127–28 (11th Cir. 2014).

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Defendants may seek dismissal of shotgun pleadings as well as individual claims for: (1) "lack of subject matter jurisdiction" (Fed. R. Civ. P. 12(b)(1)); and (2) "failure to state a claim upon which relief can be granted" (Fed. R. Civ. P. 12(b)(6)).[5] To avoid dismissal under Rule 12(b)(6), a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts should dismiss a claim when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support [such] claim." *See Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas. Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

The Eleventh Circuit requires that qui tam relators meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) as to every element of their FCA claims. *See Corsello*, 428 F.3d at 1013 (affirming dismissal of FTC claims due to plaintiff's failure

---

[5] In resolving a Rule 12(b)(1) motion to dismiss, courts "must weigh the parties' evidence, at least for factual attacks" to the court's exercise of subject matter jurisdiction. *See Osheroff*, 776 F.3d at 810 n.2. In contrast, when resolving a Rule 12(b)(6) motion to dismiss, courts must consider only the complaint, its exhibits, "documents incorporated into the complaint by reference," and matters that are subject to judicial notice. *See Telltabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Courts may take judicial notice of publicly filed documents, such as those in state court litigation." *Osheroff*, 886 F.3d at 811 n.4. Courts also may take judicial notice of published materials such as newspaper articles, but only for the purpose of determining the content—not the truth—of such materials. *Id.*

7

"to plead fraud with particularity"); *see also Jallali v. Sun Healthcare Grp., Sundance Rehab. Agency, Inc.*, No. 15-14231, 2016 WL 3564248, at *1 (11th Cir. July 1, 2016) (affirming dismissal of FCA claims).) Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To meet this standard, relators in qui tam actions "must plead facts as to time, place, and substance of the defendant's alleged fraud." *See Clausen*, 290 F.3d at 1310.

Generally, Courts should dismiss a claim if the sufficiently pled "factual content" of the complaint does not allow the court to "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged" in the claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). When an FCA claim is at issue, district courts must disregard assertions of law and conclusory statements of fact regarding a defendant's alleged fraudulent submissions to the Government. *See Clausen*, 290 F.3d at 1312. Further, district courts should not draw inferences in favor of relators concerning the submission of fraudulent claims because doing so would strip "all meaning from Rule 9(b)'s requirements of specificity." *Corsello*, 428 F.3d at 1013 (citing *Clausen*, 290 F.3d at 1312 n.21).

## DISCUSSION

Although the Amended Complaint is a lengthy 234 paragraphs—less than half of those paragraphs concern Defendants' allegedly "illegal and fraudulent practices" (*see* Doc. 61, ¶¶ 54–113, 118–27, 129–37, 143–47, 158, 162–88), while approximately one-third of the Amended Complaint is comprised of statements of law and legal conclusions concerning the FCA, FCCA, AKS, Stark Act, the Medicare and Medicaid Services

("**CMS**"), and other government-funded health care programs.[6] (*See id.* ¶¶ 4, 7–13, 30–53, 114, 116, 138–39, 142, 148–57, 159–61, 189–90.) Further, as noted by the Court at the Hearing, all seven counts of the Amended Complaint improperly incorporate by reference the same 192 paragraphs. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015); *Ferrell v. Durbin*, 311 F. App'x 253, 259 (11th Cir. 2009). Further, only a very small fraction of those 192 paragraphs address the purportedly actionable claims submitted to the U.S. and the State. (*See* Doc. 261, ¶¶ 129–33, 136–37, 188.) In short, the Amended Complaint does not satisfy the minimum pleading requirements for qui tam actions in this Court.

Given the necessity of pleading FCA claims with particularity, the large number of Defendants named in the Amended Complaint, and the expanse of time at issue, Relator's shotgun-style pleading is particularly problematic and must be remedied. Accordingly, the Court finds in favor of Defendant concerning the Shotgun Argument and the Particularity Argument; however, the Court finds that the Amended Complaint is due to be dismissed *without prejudice*.

If Relator chooses to file a Second Amended Complaint, he should be mindful of his obligations under Federal Rules of Civil Procedure 9(b) and 11, as well as the law recently established in *Universal Health Servs., Inc. See* 136 S. Ct. at 2001. Further, any FCA claims asserted by Relator must fall within the six-year statute of limitations that

---

[6] Relator generally alleges that damages were incurred by the U.S. through the Department of Health and Human Services ("**HHS**"), the Veterans Administration ("**VA**"), and Medicare and Medicaid Services ("**CMS**"). *See* 42 U.S.C. § 1395h; 42 C.F.R. §§ 421.3, 421.100 (concerning the CMS); 42 U.S.C. §§ 426, 426A (concerning Medicare); 42 U.S.C. § 1396 (concerning Medicaid); *see also* 10 U.S.C. §§ 1079(j)(2), (h)(1); 32 C.F.R. § 199.

applies when the U.S. declines to intervene in a qui tam proceeding. *See* 31 U.S.C. § 3731(b)(1). Relator also should take care not to assert FCCA claims unless he has fully complied with pre-litigation notice requirements. Finally, Relator must take care to include sufficient factual allegations to establish that he is an "original source" as required under the pertinent version of the FCA. *See* 31 U.S.C. § 3730(e)(4) (2012); 31 U.S.C. § 3730(e)(4) (2013); *see also Cooper v. Blue Cross Blue Shield of Fla., Inc.*, 19 F.3d 562, 565 n. 4 (11th Cir. 1994) (articulating a three-part test for deciding if the PDB in the prior version of the FCA applies).

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

(1) Defendants' Joint Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law (Doc. 74) is **GRANTED**.

(2) Relator's Amended Complaint (Doc 61) is **DISMISSED WITHOUT PREJUDICE**.

(3) On or before **August 22, 2016**, Relator may file a Second Amended Complaint in accordance with the requirements of this Order. If Relator fails to timely file a Second Amended Complaint, this action will be closed without further notice.

(4) If Relator timely files a Second Amended Complaint, then—on or before **August 31, 2016**—the parties shall jointly file a report addressing new deadlines for the prompt and efficient resolution of this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 22, 2016.



ROY B. DALTON JR.
United States District Judge