UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA; and
THE STATE OF FLORIDA,

    Plaintiffs,

*ex rel.*

JOHN DOE,

    Relator,

v.                                                   Case No. 6:14-cv-501-Orl-37DCI

HEALTH FIRST, INC.; HEALTH FIRST
HEALTH PLANS INC.; HEALTH FIRST
MEDICAL GROUP; HOLMES
REGIONAL MEDICAL CENTER;
PALM BAY HOSPITAL; CAPE
CANAVERAL HOSPITAL; VIERA
HOSPITAL; MELBOURNE SAME DAY
SURGERY CENTER; and MELBOURNE
GI CENTER,

    Defendants.

## ORDER

Before the Court is a motion for numerous avenues of relief. (*See* Doc. 129 ("**Instant Motion**").) Importantly, the Instant Motion arises from the breakdown of the parties' efforts to memorialize the terms of a settlement agreement in written form. (*See id.*) To summarize, after advising the Court that the parties had reached a settlement (Doc. 120), and allowing the United States to seek multiple extensions of time to approve such settlement (*see* Docs. 121, 124), Relator attempted to nullify the agreement

-1-

by invoking the failure of a long-passed deadline for the occurrence of a condition precedent. (*See* Doc. 129.) The Court was not advised of the fallout until the Health First Defendants[1] filed the Instant Motion seeking the following alternative forms of relief: (1) dismissal of the action with prejudice as to Relator; (2) enforcement of the settlement agreement and compulsion of arbitration with respect to any remaining disputes; or (3) vacation of the settlement agreement reached in a related antitrust action. (*Id.*) Though the Court declines to grant the first and third grounds for relief, for the reasons set forth below, the Health First Defendants' request to enforce the settlement agreement and compel arbitration of any remaining disputes is due to be granted.

## I.  BACKGROUND

The instant False Claims Act ("**FCA**") litigation is inextricably entwined with a companion antitrust action also pending before the Undersigned. *See Omni Healthcare Inc. v. Health First, Inc.*, Case No. 6:13-cv-1509-Orl-37DCI ("**Antitrust Action**"). Indeed, both the Realtor and many of the Defendants in the instant action are also parties to the Antitrust Action.

### A.  Docket Activity and Representations to the Court

By all appearances, the parties reached a resolution of the disputed issues in both

---

[1] The Health First Defendants include Health First, Inc., Health First Health Plans Inc., Health First Medical Group, Holmes Regional Medical Center, Palm Bay Hospital, Cape Canaveral Hospital, Viera Hospital, Melbourne Same Day Surgery Center ("**MSDS**"), and Melbourne GI Center ("**MGIC**"). (*See* Doc. *129*; *see also* Doc. 130 (evidencing MSDS and MGIC's concurrence with the Instant Motion).) Excluded from this group is Defendant Melbourne Internal Medicine Associates, P.A. ("**MIMA**"), who settled with Relator separately and has since been terminated as a party to this action. (*See* Docs. 140, 141.)

cases following an in-Court announcement during the trial of the Antitrust Action (August 16, 2016) and a subsequent mediation (October 31, 2016).[2] Such appearances included an **August 19, 2016** notice to the Court by counsel for Relator ("**Counsel**"), indicating that the parties had reached "an agreement in principle to settle all claims against all defendants."[3] (Doc. 120 ("**Notice of Settlement**").) Pursuant to the Notice of Settlement, the Court dismissed this action with prejudice, subject to the right of the parties to move—within sixty days: (1) for a stipulated final order or judgment; or (2) to reopen the case on a showing of good cause. (Doc. 122 ("**Dismissal Order**").) The Dismissal Order was subsequently vacated upon request of the United States (Doc. 121), who had not joined in the action but nevertheless retained the right to approve any settlement and consent to any dismissal (Doc. 96). (Doc. 123 ("**Order Vacating Dismissal**").) The Order Vacating Dismissal also extended the date for administrative closure of the case to **October 24, 2016** ("**Amended Deadline**"). *Id.*

Upon further motion by the United States (Doc. 124), U.S. Magistrate Judge Daniel C. Irick extended the Amended Deadline through **December 23, 2016**. (Doc. 126.) Importantly, in its motion to extend the Amended Deadline—submitted on **October 24, 2016**—the United States represented that the parties had "certain disagreements to resolve" in connection with both the instant action and the related Antitrust Action,

---

[2] (*Antitrust Action*, Doc. 326; Doc. 359, p. 5.)
[3] The Court had previously: (1) dismissed Relator's Amended Complaint without prejudice due to his failure to satisfy the minimum pleading requirements for qui tam actions; and (2) directed him to file a second amended complaint on or before **August 22, 2016**. (Doc. 119.) Accordingly, the Notice of Settlement also requested that the Court moot Relator's deadline to file a second amended complaint. (Doc. 120.)

which they were seeking to resolve with the assistance of a mediator. (Doc. 124, p. 3.)

B.     Contemporaneous Settlement Discussions

In reviewing the parties' settlement discussions, it is apparent that, with the assistance of Judge Gary A. Feess[4] as mediator, the parties reached a settlement of the Antitrust Action on **August 15, 2016**. (*See* Docs. 129-2, 129-3). Subsequently, Judge Feess proposed a monetary settlement to resolve the instant action, notwithstanding the fact that, as he noted, he had not been officially tasked with that duty. (Doc. 129-3.) The proposal also included a provision recommending alternative dispute resolution procedures for non-monetary settlement terms ("**ADR Provision**"). (*Id.*)

On **August 18, 2016**, Relator accepted the proposed monetary settlement on the condition that a written settlement agreement be executed in the Antitrust Action by **September 16, 2016** ("**September 16 Deadline**") ("**Settlement Condition**"). (Doc. 129-4.) The addition of the Settlement Condition to Judge Feess's proposal constituted a counter offer (*id.*), which the Health First Defendants accepted the following day. (Doc. 129-5.) Ultimately, the agreement was memorialized in an e-mail communication dated **August 19, 2016** ("**August 19 Agreement**"). (*Id.*) That same day, consistent with his obligations under the Local Rules, Counsel provided the Notice of Settlement to the Court. (Doc. 120.)

In the weeks that followed, the parties exchanged modified versions of the August 19 Agreement—none of which were ever agreed to. Nonetheless, at least as late as **September 8, 2016**, Counsel explicitly stated that Relator had no intention of

---

[4] Former U.S. District Judge for the Central District of California.

reneging on the August 19 Agreement and expressed the belief that the parties were working cooperatively toward the consummation of a written term sheet. (Doc. 129-9.)

On **September 15, 2016**, for the first time, the issue of the seemingly arbitrary September 16 Deadline was raised by counsel for the Defendants, who expressed concern that it would not be met in light of the continued editing of the antitrust agreement and defense counsel's trial schedules. (Doc. 129-10.) Hence a proposed extension of **October 14, 2016**, was requested. (*Id.*) In response, the United States, as the real party in interest,[5] acquiesced to the extension so long as the parties continued to work out the details of the FCA settlement. (Doc. 129-12.) Relator did not respond to the requested extension but continued to negotiate the terms, conditions, and language of the FCA settlement. (*See* Doc. 129-13.) Presumably, the United States continued to evaluate the "working qui tam settlement draft," upon which they expected to circulate comments in "the next few days" following **September 15, 2016**. (Doc. 129-12.)

On **September 22, 2016**, nearly a week beyond the September 16 Deadline, Counsel acknowledged that negotiations were continuing in the Antitrust Action and that "the outcome of that mediation (or arbitration) [would] likely resolve most if not all of [Relator's] objections to the FCA settlement agreement." (Doc. 129-14 ("**September 22 E-mail**").) Counsel went onto state that "the FCA agreement [would] not likely advance much until the [antitrust] agreement [was] resolved" and, "[c]onversely, once the [antitrust] agreement [was] resolved, the FCA agreement

---

[5] *See* 31 U.S.C. § 3730(b)(1) (stating that a civil action for the violation of the FCA must be brought in the name of the Government).

[would] likely move very rapidly." (*Id.*)

Later, in an e-mail dated **October 13, 2016**, Counsel returned the participants to the language of the September 22 E-mail and suggested that a phone conversation might be more productive than an exchange of red-line documents to reach agreement on the non-monetary issues that remained in dispute. (Doc. 129-15.) At this time, Counsel noted that the FCA settlement was conditioned on the finalization of the antitrust settlement; however, no mention of the now long-elapsed September 16 Deadline was made. (*Id.*)

After a series of what Judge Feess previously described as "micro-moves" (*see* Doc. 129-3, p. 2), the parties' attempts to resolve the non-monetary aspects of the FCA settlement broke down. On **November 17, 2017**, Counsel, for the first time, asserted that, despite prior assurances to the contrary, Relator was repudiating the settlement terms reached in the August 19 Agreement due to the failure to consummate the antitrust settlement by the September 16 Deadline. (Doc. 129-16, p. 5.) Upon receipt of this communiqué, the Health First Defendants attempted to invoke the ADR Provision. (*Id.* at 4–5.) But relying on the asserted materiality of the September 16 Deadline, Relator refused to comply—effectively lodging the case in a mud bog from which the Health First Defendants now appeal to the Court for extrication. (*See id.* at 2–4.)

### C. Instant Motion

Based on the foregoing, the Health First Defendants move to: (1) dismiss this action with prejudice as a sanction for Relator's alleged bad faith conduct and misrepresentations to the Court and the parties; (2) enforce the August 16 Agreement—

inclusive of the ADR Provision—on the ground that the Realtor waived the September 16 Deadline; and (3) set aside the settlement reached in the Antitrust Action on the basis that Relator fraudulently induced the Health First Defendants to enter such agreement in light of the parties' agreement that the settlement of the instant action and the Antitrust Action were codependent.[6] (Doc. 129.)

In his response, Relator argues that: (1) dismissal with prejudice is not warranted because he did not commit any misconduct; (2) the settlement agreement cannot be enforced because the Settlement Condition failed; and (3) he never waived any right with respect to the Settlement Condition. (Doc. 139.) Relator also contends that he never agreed to the ADR Provision in Judge Feess' August 16 e-mail. (*Id.* at 16.)

## II.    ROADMAP

To resolve the Instant Motion, the Court must first determine whether the parties reached a binding settlement agreement. The Court will then assess the effect of the Settlement Condition and whether Relator waived such condition.

## III.    LEGAL STANDARDS

While the substantive claims in the Antitrust Action and this FCA litigation are rooted in federal law, the issues relating to the enforceability of the settlement agreement, including the question of waiver, require the Court to look to state law. *See*

---

[6] As previously stated, MSDS and MGIC concurred in the Instant Motion on December 20, 2016, asserting their position that: (1) all parties were bound by the material terms of the August 19 Agreement; (2) the September 16 Deadline was not material to Realtor, MSDS, MGIC, or MIMA; and (3) all parties agreed that any issues regarding a release would be mediated and, if necessary, arbitrated by Judge Feess. (Doc. 130.)

*Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000). Thus, the Court will first review the applicable legal standards under Florida law.

    A.    **Judicial Enforcement of Settlement Agreements**

Federal district courts have the inherent power to summarily enforce settlement agreements entered into by litigants in a pending case. *See Kent v. Baker*, 815 F.2d 1395, 1400 (11th Cir. 1987). "In Florida, settlement agreements are favored as an efficient way to settle disputes and as a means to conserve judicial resources[,]" and "[c]ourts will enforce them when it is possible to do so." *BP Prods. N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1133 (M.D. Fla. 2007).

"A motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract . . . ." *Conte v. Winn Dixie Stores, Inc.*, No. 3:13-cv-463-MCR-EMT, 2014 WL 4693072, at *2 (N.D. Fla. Sept. 22, 2014). To prove the existence of a contract under Florida law, the propounding party must demonstrate the existence of: (1) an offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014). An essential, or material, term is "[a] contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." *Material Term*, BLACK'S LAW DICTIONARY (9th ed. 2009). Of course, the essential terms of any given contract may vary depending on the circumstances of the parties' transaction. *Giovo v. McDonald*, 791 So. 2d 38, 40 (Fla. 2d DCA 2001). But, at bottom, they "must include the terms specified in an offer to make a contract." *Id.* Therefore, as here, a party seeking to enforce a settlement agreement "has the burden to prove assent by the

opposing party and must establish that there was a meeting of the minds or mutual or reciprocal assent to certain definite propositions." *Id.*

"As long as an intent to settle essential elements of the cause can be established, it matters not that the agreement is not fully executed or reduced to writing, as even oral settlements have been fully recognized and approved by the [Florida courts]." *Allapattah Servs., Inc. v. Exxon Corp.*, Nos. 05-21338-CIV, 91-0986-CIV, 2007 WL 7756735, at *2 (S.D. Fla. Sept. 26, 2007). Moreover, "[e]ven though all the details are not definitely fixed, an agreement may be binding if the parties agree on all the essential terms and seriously understand and intend the agreement to be binding on them." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 408 (Fla. 1974).

### B. Conditions Precedent

A condition precedent is "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises. If the condition does not occur and is not excused, the promised performance need not be rendered." *Condition Precedent*, BLACK'S LAW DICTIONARY (9th ed. 2009).

> "A condition may be either a condition precedent to the formation of a contract or a condition precedent to performance under an existing contract. In the case of a condition precedent to formation, . . . the contract does not exist unless and until the condition occurs. In the case of a condition precedent to performance, a contract exists that may be enforced pursuant to its terms."

*Mitchell v. DiMare*, 936 So. 2d 1178, 1180 (Fla. 5th DCA 2006).

### C. Waiver

Under Florida law, waiver operates to estop a person from asserting a right upon

which he otherwise might have relied. *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 97 (Fla. 2013). Hence a party to a contract waives the right to rely on a material term, such as time of performance, when he intentionally or voluntarily relinquishes the right. *See Gilman v. Butzloff*, 22 So. 2d 263, 265 (1945); *see also Oakridge*, 469 F. Supp. 2d at 1134. Relinquishment may be inferred from conduct or acts that put the other party off his guard and lead him to believe that the demanding party has waived the right sought to be enforced. *Gilman*, 22 So. 2d at 265. Therefore, "when a condition is waived, it is no longer a condition precedent." *Wilson & Toomer Fertilizer Co. v. Auto. Ins. Co.*, 283 F. 501, 510 (S.D. Fla. 1922); *see also Jones v. United States*, 96 U.S. 24, 28 (1877) ("Conditions precedent may doubtless be waived by the party in whose favor they are made . . . .").

## IV. ANALYSIS[7]

### A. Formation of Settlement Agreement

As a preliminary matter, the Court rejects Relator's contention that an enforceable contract was never formed. To the contrary, an enforceable settlement agreement was formed on **August 19, 2016**, based on the following correspondence.

On the morning of **August 16, 2016**, Judge Feess sent correspondence to counsel for both parties with the heading "Mediator's Recommendation – Qui Tam Litigation." (Doc. 129-3 ("**August 16 E-mail**").) The August 16 E-mail contained the following

---

[7] The facts of the parties' communications are not in dispute; rather, the parties only dispute the legal effect of their communications. As such, the Court declines to entertain the Health First Defendants' request for a hearing. *Cf. Mass. Cas. Ins. Co. v. Forman*, 469 F.2d 259, 260 (5th Cir. 1972) (stating that a plenary hearing is required where material facts concerning the existence of an agreement to settle are in dispute).

recommendation:

> (1) that the case settle for $3.5 million, with $3 million allocated to settle the claims and $500,000 allocated for attorney fees and costs; and
>
> (2) that the parties separately resolve non-monetary settlement terms and submit disputes regarding such terms to Judge Feess for resolution—first by mediation and, if unsuccessful, then by final binding non-appealable determination.

("**Mediator's Recommendation**"). (Doc. 129-3, pp. 2–3.) The parties were to respond to Judge Feess individually stating "yes, we accept" or "no, we reject" on or before **August 16, 2016 at 6:00 p.m**. ("**Response Deadline**").[8] (*Id.* at 3.) Of particular importance is Judge Feess's instruction that "[c]ounterproposals [would] be deemed rejections, but communicated promptly to the other side." (*Id.*)

In response, Relator asserted the following counterproposal, requesting a response by **August 19, 2016 at noon**:

> We accept a settlement of the qui tam case against Health First as outlined in the mediator's recommendation conditioned upon resolution and settlement of the financial and non-monetary terms of the settlement of the [Antitrust Action] and the execution of a written agreement to settle that action by September 16, 2016 ("**Counter Offer**").

(Doc. 129-4.)

On **August 19, 2016, at 10:29 a.m.**, counsel for the Health First Defendants[9] sent an e-mail to Judge Feess stating, in relevant part:

---

[8] Though the August 16 E-mail stated a response deadline of *April* 16, 2016, it is clear that this was a scrivener's error. The Response Deadline was later extended to **6:00 p.m. on August 19, 2016**. (Doc. 129-5, p. 3.)

[9] Excluding MSDS and MGIC.

> I am pleased to announce that the parties have reached an agreement. . . . as such, Relator will accept the total amounts agreed upon and release all of his claims against all of the Defendants in this matter with the understanding that the [G]overnment will be solicited for consent and approval of the same. The terms of your [M]ediator's [R]ecommendation have been accepted as well as the [Counter Offer] imposing a September 16 deadline for executing and consummating the [Antitrust Action] settlement ("**August 19 E-mail**").

(Doc. 129-5.)

As evidenced by these communications, it is clear that the August 19 E-mail evidenced the Health First Defendant's acceptance of the Counter Offer. Second, as consideration for the agreement, the Health First Defendants promised to pay Relator $3.5 million, and Relator promised to release all of his claims against Defendants in this action. And third, as a whole, the essential terms of the parties' agreement included the following:

> (1) that the Health First Defendants pay the Realtor $3.5 million, with $3 million allocated to settle the claims and $500,000 allocated for attorney fees and costs;
>
> (2) that Relator release all of his claims against Defendants in this action;
>
> (3) that the parties to the Antitrust Action resolve both the financial and non-monetary settlement terms and execute a written settlement by September 16, 2016; and
>
> (4) that the parties separately resolve any non-monetary settlement terms, and, in the event that they are unable to reach such resolution, submit disputes to Judge Feess for mediation or final binding non-appealable determination.

Given the preceding offer, acceptance, consideration, and specification of essential terms, as of **August 19, 2016**, the parties had entered into a binding agreement.[10] That the United States would still need to consent to the memorialized agreement, *see* 31 U.S.C. § 3730(b)(1), did not bar its enforceability. *See Aldora Aluminum & Glass Prods., Inc. v. Poma Glass & Specialty Windows, Inc.*, No. 3:14-cv-1402-J-34JBT, 2015 WL 4092781, at *4 (M.D. Fla. July 6, 2015) (recognizing that Florida courts have found contracts enforceable despite a condition requiring approval by a third party). Although the parties may have contemplated a more comprehensive settlement agreement, their communications reveal that they were unable to agree on additional or modified terms. Thus, absent such modification, the August 19 Agreement remained enforceable in and of itself. *See Watson v. Bank of Am. Corp.*, No. 9:13-cv-81137-KAM, 2015 WL 5011947, at *5 (S.D. Fla. Aug. 21, 2015), *adopted by* Case No. 9:13-cv-81137-KAM (Doc. 74) (finding that, although a mediated settlement agreement contemplated a final settlement agreement, where the parties were subsequently unable to agree on the terms of the latter, the former stood on its own and was fully enforceable).

---

[10] Indeed, courts within the Eleventh Circuit have enforced settlements agreements where the essential terms included the litigants' assent to execute and resolve other discrete provisions. *E.g.*, *Conte*, 2014 WL 4693072, at *6 (enforcing settlement agreement where two of the essential terms included: (1) the execution of a full waiver and release; and (2) agreement to other common settlement terms and conditions, including confidentiality and no-rehire provisions); *see also Brooks v. Waste Pro of Florida, Inc.*, No. 8:13-cv-2447-T-30-TGW, 2015 WL 5781161, at *5 (M.D. Fla. Sept. 30, 2015) (enforcing a final settlement agreement based on a term in the mediated settlement terms sheet stating that "the Parties agree to enter into a final settlement agreement, which shall contain, but not be limited to, a general release and waiver of all claims").

### B. Waiver of September 16 Deadline

In any event, the parties do not truly dispute the existence of an agreement to settle arising from their communications. Rather, their dispute centers on whether the August 19 Agreement essentially expired, or became unenforceable, beyond the September 16 Deadline. Notably, pursuant to the Settlement Condition, if the Antitrust Action was not settled by the September 16 Deadline, Relator was excused from any further obligation under the August 19 Agreement. *See Land Co. of Osceola v. Genesis Concepts*, 169 So. 3d 243, 247 (Fla. 4th DCA 2015) ("Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty."). So the fishhook in the chowder is whether Relator, by his conduct, waived the September 16 Deadline, motive notwithstanding.

First, there is no question about the materiality of the September 16 Deadline, as time of performance was a material term of the parties' agreement. *See Centurion Air Cargo v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (stating that under Florida law, time is of the essence, *inter alia*, when "the agreement explicitly so specifies"). Accordingly, because insistence on the time-of-performance term was a "known right," the question for the Court is whether Relator relinquished that right. *See Gilman*, 22 So. 2d at 265 (stating that waiver may occur implicitly, through action or inaction, so long as the conduct clearly evinces a relinquishment of the right).

Under the circumstances, to avoid a claim of waiver and sustain his position that

the August 19 Agreement was null and void upon the passage of the September 16 Deadline, Relator would need to have: (1) provided reasonable notice to the Health First Defendants that their proposed extension was rejected and that the August 19 Agreement was breached for failure to meet the September 16 Deadline; (2) provided notice to the United States, as the real party in interest, that the August 19 Agreement was now no longer operative due to the expiration of the September 16 Deadline; (3) informed the Court that the Notice of Settlement filed on August 19, 2016, was not consummated due to the breach of the September 16 Deadline; (4) timely requested reopening of the action; and (5) timely moved for leave to file a second amended complaint beyond the prior deadline. Relator did none of these things until November and December of 2016 (*see* Docs. 129, 137)—more than sixty and ninety days after the September 16 Deadline.

Based on this record, the Court finds the actions and inaction of Relator, both prior and subsequent to the expiration of the September 16 Deadline, clearly demonstrate a relinquishment of the right to rely on that element of the agreement. For example, if at the time of the September 22 E-mail, the passage of the September 16 Deadline was an impediment to settlement in any way, Counsel should have raised it. Similarly, it was reasonable for the Health First Defendants to expect Counsel to object to the proposed extension circulated on September 8, rather than remaining silent, if the September 16 Deadline continued to be material to the resolution of this action. But no action suggesting the continued materiality of the September 16 Deadline was taken by Counsel or the United States in response to the request for an

extension. (Doc. 129-14.) Moreover, at no time during the period between **August 19, 2016**—the date of agreement—and **December 23, 2016**—the date Relator first sought leave to continue these proceedings (*see* Doc. 137)—did Relator advise the Court of any alteration in the status of the proceedings contrary to his Notice of Settlement.[11] It is also worth noting that Relator settled with MIMA well after the September 16 Deadline. (*See* Doc. 134.)

"The law is well settled that a [party] cannot take advantage of a delay in performance which he condoned or was a party to. This is true when time is the essence of the contract." *Forbes v. Babel*, 70 So. 2d 371, 372 (Fla. 1953). Here, there was no attempt by Relator at any reasonable time following the September 16 Deadline to invoke the failure of the Settlement Condition to excuse his performance under the August 19 Agreement.[12] Rather, his conduct condoned continued discussions following this date. Thus, Relator waived the September 16 Deadline.

As such, the essential terms of the parties' agreement include only the following:

(1) that the Health First Defendants pay the Realtor $3.5 million, with $3 million allocated to settle the claims and $500,000 allocated for attorney fees and costs;

---

[11] Additionally, while the parties to the dual actions may have had an understanding or impression that one would not, or could not, be settled without the other being concurrently resolved, at no time was that assertion reported to the Court or identified in any of the parties' submissions as a condition of settlement or a contingent antecedent to resolution. Contrary to Relator's assertions, as the party who reneged on settlement discussions, it was primarily his responsibility to inform the Court why the Notice of Settlement was no longer effective.

[12] The Court finds that the case law submitted by Relator in support of the proposition that a two-month delay is reasonable is distinguishable on these facts.

> (2) that Relator release all of his claims against Defendants in this action;
>
> (3) that the parties to the Antitrust Action resolve both the financial and non-monetary settlement terms and execute a written settlement ~~by September 16, 2016~~; and
>
> (4) that the parties separately resolve any non-monetary settlement terms and, in the event that they are unable to resolve such terms, submit such disputes to Judge Feess for resolution either by mediation or final binding non-appealable determination.

Consequently, the portion of the Settlement Condition that remained material was the execution of a written settlement agreement in the Antitrust Action. This condition was satisfied in mid-December. As Relator has asserted no other basis to avoid its obligations, the Health First Defendants' motion to enforce the August 19 Agreement is granted. *See DK Arena*, 112 So. 3d at 98 ("[I]f a plaintiff has been caused to delay his performance beyond the specified time by request or agreement or other conduct of the defendant, the plaintiff can enforce the contract in spite of his delay.").

Having resolved the Instant Motion on these grounds, the Health First Defendants' alternative requests for dismissal with prejudice or to set aside the antitrust settlement are denied.[13]

## IV. CONCLUSION

Consistent with their agreement, the parties are directed to return to Judge Feess

---

[13] Notably, a significant portion of the settlement proceeds in the Antitrust Action have already been distributed. (*Antitrust Action*, Doc. 386.)

and pursue resolution of any non-monetary settlement terms that remain in dispute, *i.e.*, "first by way of mediator, and if mediation is unsuccessful, then by way of final[,] binding[,] non-appealable determination." (Doc. 129-3, p. 3); *see also Advanced Bodycare Sols., LLC v. Thione Int'l., Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) (suggesting that agreements to mediate may be specifically enforceable in contract).

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss with Prejudice or Alternatively, to Enforce Settlement Agreement, Compel Arbitration, and/or Set Aside Antitrust Settlement Agreement (Doc. 129) is **GRANTED IN PART AND DENIED IN PART**.

    a. To the extent the Health First Defendants seek to enforce the August 19 Agreement and compel arbitration of remaining disputes, the Motion is **GRANTED**.

    b. In all other respects, the Motion is **DENIED**.

2. The parties are **DIRECTED** to submit any remaining disputes to Judge Feess in the manner set forth in their agreement and appropriately compensate him for his services consistent with the parties' prior agreements or understandings.

3. A written settlement agreement must be submitted to counsel for the United States on or before Friday, **June 9, 2017**.

4. On or before Friday, **June 23, 2017**, counsel for the United States is **DIRECTED** to notify the Court whether it approves the settlement and

consents to dismissal of this action.[14]

**DONE AND ORDERED** in Chambers in Orlando, Florida, on May 10, 2017.

ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record

---

[14] On December 23, 2016, the United States notified the Court that it had approved Relator's settlement with MIMA but requested additional time to review the agreement vis-à-vis the Health First Defendants—dependent on the Court's resolution of the Instant Motion. (Doc. 134.)